Good morning, your honors. May it please the court. My name is David Sluster. I'm appearing on behalf of appellant Alecia Trapps. With the court's indulgence, I would like to preserve two minutes for rebuttal. Based on the record, the district court record in its totality as of the time of Ms. Trapps' Rule 11 plea colloquy on February 1, 2019, a reasonable jurist would have concluded that there was a strong possibility that Ms. Trapps was especially vulnerable to entering an involuntary plea that day. And the reason for that is that even as the record reflected as of February 1, 2019, and was later developed in this court of course under Dominguez-Benitez, Monsoon, Fuentes-Galvez has to consider the record in its totality for the purpose of a plain error review under Rule 11. Counsel, was there anything unusual about February 1? Was she under any particular disability on that day that she wasn't under on February 2nd or on January 31st or on April 1st or December 1st two months earlier? Your honor, we acknowledge that there is nothing in the record to indicate that there was anything particularly amiss on that day, but under Fuentes-Galvez, and I'll quote from it on page 917, this court has to consider under the totality of circumstances whether the there was significant enough risk of overlooking potential involuntary charges. Right, but you're arguing that she would have been vulnerable no matter when she took this plea. And that is correct, your honor. And it was plain error for the district court not to have done what? What else should the district court have asked her? He asked her, are you pleading voluntarily? Have you talked with your counsel? Is your counsel here today? You realize you're giving up your jury rights. She had quite a criminal record. She knew what her rights were. She was not a novice to the system. And he asked her all of those questions, and she answered them yes, and he was able to observe her. So what's the plain error? What should the district court have asked her? Certainly, your honor. Fuentes-Galvez made plain, your honor, that when a defendant has mental illness issues, has issues relating to addiction, as was true in Fuentes-Galvez, the district court is required under Rule F and B-2 to conduct a comprehensive inquiry into- So counsel, that's kind of building on what my colleague was just asking and what you're saying. Is it the case that if they have substance abuse in their past that they just have to do the inquiry? Is that your position? Because it sounds like there was nothing necessarily on that day that would have stood out to the judge, and you acknowledge that. So I think maybe is your position that if you have somebody like this who has a history of substance abuse, then they just have to inquire into that? Is that just a black rule? Yes, your honor. And two points in response to that. First is that Ms. Trapps did have a close to 40-year history of abusing alcohol and controlled substances, including cocaine and methamphetamine. Second, she had recently been re-detained as of late November 2018 because the magistrate judge in the Eastern District of California had determined that there was no set of conditions that would ensure her continued appearances for court proceedings. And that was in part because the government had commenced those detention, re-detention proceedings, I'll call them, because Ms. Trapps had missed a required urine test. The government had also alleged that she had submitted a diluted urine sample, although the government later retracted that. Is there any evidence that on February 1st that she was suffering any of the ill effects? She'd been in custody for quite some time. There's no evidence that she was intoxicated on that date, your honor. But not only do district judges under Rule 11 need to inquire for Rule 11.2b2 purposes whether the defendant was then intoxicated, but in her situation, under her specific set of facts, the district judge should have inquired as to whether she was suffering from any withdrawal symptoms. And she had, as mentioned, decades-long problems with substance abuse. How long had she been incarcerated when she took the plea? She had been detained, your honor, since late November 2018. And she then appeared for the Rule 11 Codeway on February 1st, 2019. So slightly more than two months. So if she was suffering from withdrawal symptoms, those probably would have taken place while she was, you know, shortly after she was incarcerated. This is now more than two months later. I suppose, your honor, although there's always a possibility, again, we don't know on this record because the district judge did not develop it as required under Rule 11b2, but it's at least entirely possible. And again, we don't know on the record, but it's entirely possible that she may have relapsed while she was incarcerated. But have you, is there any evidence that she did relapse? Anything from any expert that would tell us that? How about her prior counsel? Her counsel was with her. She thanked her counsel in the hearing. No, there's no evidence, your honor. But as Fuentes Galvez mentioned, the reason why these are required mandatory advisals and inquiries under Rule 11b2 is that a key purpose is to avoid these kinds of post hoc type inquiries into what was happening. How long would it have been between the time that Fuentes Galvez was picked up by the Border Patrol and his hearing? I don't know the answer to that, your honor. I will try to get that for you in rebuttal after I review the case. But I don't know how much time it actually elapsed. But I do know that in Fuentes Galvez, this court did not in any way try to inquire as to what his condition was at the time of his plea colloquy, nor did it suggest that that was required. He was subject to substance abuse. He was taking medications. He had mental disorders, no schooling, and was a non-English speaker. He was picked up in September and tried in November. And I must also say there were two of them being given the colloquy at the same time, which again tells us that something was wrong in Fuentes Galvez's case. I think we can all acknowledge that, your honor, but I don't think that Fuentes Galvez set a hard baseline for the specific totality of the circumstances that have to exist for a plea to be suspect for Rule 11b2 purposes. And so, you know, our main contention is that because Ms. Trapps's substance abuse was so pervasive and at least indirectly contributed to her to be re-detained, that made her especially vulnerable as of February 1st. Can I ask you this way? If we were to hold for you in this case, how many plea colloquies are being conducted improperly? I mean, she does not seem to be an unusual criminal defendant. And if the rule you're asking for is the one that we would accept, I think we're going to have to change an awful lot of plea colloquies and how they're carried out. I think, your honors, Fuentes Galvez has been good law in this circuit for more than two years now. So I think the district judges are well aware of their requirements and that opinion set forth some very specific types of categories that the district judge needs to inquire into under Rule 11b2. So I don't see that being too much of a concern, your honor. Counsel, the guidelines on your client were 30 years to life. She was subject to a minimum of 20 and she got 21 years. That seems like a pretty good deal. Is she asking for a trial here? Is that what she wants? Is a chance to, does she just want to talk to the judge again, or does she actually want to just go to trial? My understanding, your honor, and I'll have to reconfirm this with my client going forward. My understanding initially is that she does not intend to go to trial and she simply wants to reappear before the district judge and have a and to have sentencing then reflect the good behavior that we believe she has exhibited thus far during her incarceration. That's just a do-over, counsel. She only got 21 years. The judge departed downward from all of the guidelines and the recommendations. And she doesn't want to go to trial. She just wants to talk to the judge again and hope that the judge will give her a different sentence. Your honor, as the Supreme Court stated in Dominguez Benitez, one need not consider whether defendant's motivations are sound or wise or reflect good judgment. It's simply whether there was properly conducted rule 11 colloquy and violations of it, plain error violations of it, affected the substantial rights of the defendant. So, counsel, we're down to like 20-some seconds and let's see the amount of my colleagues. Do you want to reserve that amount of time? Certainly, I would reserve. We'll give you at least a minute on rebuttal. Thank you very much. But one thing I was going to mention to you, because it's kind of a question I have for both of you, one thing we haven't talked about so far is the judge here did ask and say to her counsel, he did say, is there any reason not to, you know, that I should not take the change of plea? Is there any reason that counsel said no? And so I'm, you know, it seems to me like counsel would be in a pretty good position to know if some of these things you're talking about were a problem. So I'd like to know on, and maybe in rebuttal, if you can address, but I'd also like to hear from government's counsel, the thought on what effect that has on our inquiry. So thank you, counsel. Thank you. We'll hear from the government. Good morning, your honors, and may it please the court. I'm Justin Giglio, and I represent the United States. The government asks this court to affirm the defendant's change of plea and sentence. And I'll start off with your honors question. And the answer to that question is yes, that question was asked of her attorney. Her attorney said there was no reason to not take the change of plea. And I think it's important to emphasize that Ms. Trapps was happy with her attorney. And there's plenty of evidence of that in the record, specifically at sentencing, where she mentioned that she's very satisfied with her attorney. That's the record at 60. And then in her letter, she also talked about how satisfied she was with her attorney. And her attorney had been pulling her out regularly in Zoom meetings. So her attorney was in a position, your honor, to know the state of mind and the mental capacity of the defendant when her attorney was asked that question. Your honors, at base, the government's point here is that the court did not commit error in its voluntariness colloquy. This case involved a back and forth change of plea between an experienced district judge and the defendant right before him. It was a back and forth in the sense that this was a conversational change of plea. Like your honor mentioned, Fuentes-Galvez had two unrelated defendants. This was one all the judge's questions. I think at one point, the record reflects that she actually asked a question of her attorney, should I mention that to him or something to that effect in respect to the forfeiture situation, which I mentioned only to point out that she was aware of what was going on and she was involved in this change of plea colloquy. It's important to also emphasize that, as your honors have mentioned, the court asked her right at the outset if she understood that her decision was hers to make and no one else's to make for her, and she affirmed. The judge asked whether she had enough time to speak with her lawyer, she affirmed. The judge specifically asked her if she was doing this of her own free will, and she again affirmed that she was. At the end of this change of plea colloquy, the district judge specifically found that the defendant was knowingly, intelligently, and voluntarily entering into the change of plea. That's the record at 12. Your honors, the defense's argument, as far as I can see, it really boils down to this case is like Fuentes Galvez, and that's just not the situation. Fuentes Galvez was a perfect storm of errors in the sense that primarily the defendant had significant mental challenges. Here, the defendant's asking the court to infer from a history of substance abuse that on the day in question she had mental challenges, but the record has no proof of that. There's nothing to indicate that she did. In fact, the record evidence proves the opposite. Although sentencing occurred sometime later, about a year and a half after the change of plea, at that point she indicated in the PSR that she had no history of mental health issues except for situational depression, for example, with the loss of a loved one. No history and none at the time of sentencing. The defendant in this case was also an English speaker. She was college educated. She was a organizer of an interstate drug trafficking organization. Just so you don't overstate this too much, she did not graduate from college. Is that correct? That's right, your honor. She had some college education. There you go. Yes, your honor. The defendant in this case, though, was a competent young woman who, at sentencing, her defense attorney... She was 58 years old. A competent woman. I'm sorry, who was running a drug trafficking organization, and her attorney actually mentioned at sentencing that she was a very effective businesswoman, just in the wrong business. That's the record at 54. During the change of plea colloquy, the judge also asked whether she was making this decision under threats or forces or promises, and she denied. The judge advised her of her trial rights in layman's terms. It wasn't a robotic reading of Rule 11. Instead, it was translated and more conversational, and there's case law in this circuit that indicates that that type of translation of the rules is okay. In addition, your honors, I would like to point out that unlike Fuentes-Galvez, this defendant had... As I mentioned, she was an English speaker, but the only point that defense points to that's like Fuentes-Galvez is a history of substance abuse, and there's nothing in the record to indicate that this defendant was under the influence of any drugs at the time of her change of plea. In fact, based on her statements and her change of plea. I also wanted to correct your honors. I believe the PSR indicates that the sentencing occurred on October 15, 2019, not in February of 2019, so it would be even additional time, I believe, after she was remanded into custody, but I don't think that that matters because as your honor pointed out, there was sufficient time between October and February anyways. Unless your honors have any further questions for me about this case. I don't think so, counsel, so the court appreciates you giving us a little extra time and we'll go back and we have a minute for rebuttal if you'd like to use it. Thank you, your honor. I would acknowledge in response to your early inquiry of me just before reserve time that Ms. Trapps' attorney, Ms. Hopkins, did not in any way indicate that Ms. Trapps was intoxicated or otherwise not capable of entering a plea at that point, but I should note that this particular- Is the government right that it had been essentially a year she'd been in custody for close to a year? She was in custody from February, late November 2018 until her sentencing, which occurred in the fall of 2021. She was earlier briefly detained before being released into an inpatient narcotics treatment program in the Eastern District of California, but I would note briefly before my time expires that the reason why this type of plea colloquy seemed to be so cursory and so colloquial as my opponent noted is that this particular district judge, and this is the third direct appeal in which I've raised these types of Rule 11 issues, this particular district judge has a history of having engaged in these kinds of what I would term to be deficient Rule 11 colloquies. Indeed, it's the second one that I've argued before Judge Van Dyke. I argued an appeal before Judge Van Dyke involving similar issues from this district judge. It was argued in December of 2021. So I think that because of the nature of his particular practices, there probably was less willingness by defense counsel to push back in some way. It was kind of systemic. It was responding to Judge Fletcher's earlier concerns. I don't think that any type of ruling in my client's favor is going to have any kind of systemic impact because I sense that very few district judges in the Ninth Circuit engage in these types of practices. If there are no further questions, I'd be pleased to submit. No, none here. Thank you, counsel. Thank you to both counsel for your helpful arguments this morning and this case will be submitted.
judges: FLETCHER, BYBEE, VANDYKE